v. City of New York. May it please the court, Suggested Gibson appearing for the Kane appellants. Just as a housekeeping matter, co-counsel and I, or counsel for the other plaintiffs and I, wanted to know if given the importance of the case, and the importance of this issue to several thousand others that this is sort of brought as an impact litigation, if we may each, including opposing counsel, have one minute rebuttal at the end, in addition to our time. Sure, that's no problem. Thank you. You'll find them a very accommodating presider. Thank you, Your Honor. So I would like to begin by saying that Black's Law Dictionary defines heresy as the rejection of one or more established beliefs of a religious body or adherence to other beliefs. It may also refer to an unorthodox religious belief. Historically, heresy was a crime. And as we all know, this country was founded to stop that practice, to stop people from being fired from their jobs or imprisoned or shunned because they held minority viewpoints or beliefs that didn't comport with the religious leaders, either of their own religion or of other religious leaders such as the Pope. Unfortunately, in this case, what we see is a resurgence of heresy and heresy. And this is not only being done by private parties, but it's being done with the encouragement, participation, and zealous enforcement of the City of New York. When asked on the eve of the implementation of these policies, of the religious exemption policies in the New York City school system, how the mayor was going to implement the religious exemption, what criteria he was going to use, the mayor bragged openly that he believed that the Pope's discussion about the scriptures not barring vaccination were very persuasive. And he said that only two religions, in his opinion, were valid means for... Is that a fair description of what he said? He didn't say there were only two valid religions. He said that there were two well-established religions over the decades. He was answering a question and he wasn't saying that those were the only ones that would be recognized. Well, Your Honor, if I may read the last part of his quote to the media and his press release after saying that these are the only two well-established religions, Christian Science and Jehovah's Witnesses, that have a history on this. He then said, so we are saying very clearly it's not something someone can make up individually it has to be you're a standing member of a faith that has a very, very specific long-standing objection. So he literally said... What's wrong with that? In other words, you can't just make up your own religion and say my own religion prohibits me from being vaccinated. What's wrong with that? Your Honor, according to case law going back decades, religion can be a personal religion. You do not have to belong to any particular religion. You do not have to share... How does the government police this if anybody could come up with a personal belief? The whole point is the government cannot police this under the First Amendment. The government cannot express a preference for any religion. They cannot do what the mayor did and said that only certain religious beliefs are valid or only certain religions have the right history on it or that the scriptures are appropriate. They cannot do what the city did and go into these Zoom appeals and say, well, I think that this Buddhist should be denied because his views conflict with the Pope's. They cannot go into press conferences and say that they prefer some over others. In fact, if they do that, it's a square... Isn't it furthermore true that there is a lot of space between large, well-established religions with a long-established tradition that would not bar vaccination and each person making it up for himself. I mean, there is also a space that includes smaller religions that don't... That disavow vaccination. It's something that's not just the person saying, I personally am not going to do it. It's a religion, but a small one. Maybe with 10,000 adherents or 500 adherents. Well, William Castro's case is a good example of that. He belongs to a small Christian church, not a Catholic church, and the whole church believes, as he does, and he submitted a letter from clergy as required by these facially unconstitutional policies, and he even belongs to a church that shares his view. No one from his church has ever gone to his church and said they support vaccination, yet he was still denied, not because they didn't find him sincere. They did find all of these plaintiffs sincere, and I think that's a really important point that was not contested below, and there's no evidence to suggest any of these appellants are insincere. The problem that the school had with his religion is that the Pope doesn't agree with his church, and so his entire church was held to be heretical. And he put that in the declaration. You know, since you filed the papers, our court has issued the We the Patriots decision. I mean, how does that impact things? Oh, the clock just came up, by the way. I see it now. Your Honor, that's the Larson doctrine. If you have even a whiff of this kind of preferencing of one over another, you have to strictly scrutinize it, so it doesn't matter whether or not, you know, the Pope has been on neutral for a long time. It's not the general clickability. This is neutrality. And the mayor and the DOA have all expressed very blatant preferences for certain religious beliefs over others, especially the Pope, and they have blatantly been on neutral. So under the Larson doctrine, that means it has to be strictly scrutinized under Masterpiece Cakeshop. The same, even a whiff of such a lack of neutrality means that no matter how compelling the reason, even in Masterpiece Cakeshop, it's very unlikely to succeed. But here I'll say that, in addition, we did submit a lot of evidence that was unrefuted that we don't have to pose a risk to anybody. This is just asking to maintain the status quo. So, Counsel, our role is not to decide this case. Our role is just to decide whether there should be a very brief stay before this falls into the hands of a merits panel, which could happen very, very quickly. And I'm wondering, I mean, if we saw enough of a problem with the religious discrimination kind of points that you are making to warrant a stay, wouldn't this be entirely satisfied if all that we stayed were the provision that beginning on December 1, 2021, the DOE can fire employees whose application for religious exemption was refused? It seems to me that if we simply stayed that one thing, beginning on December 1, 2021, the DOE can fire those who have applied for religious exemption and been excused, been refused, that would satisfy the problem at least until this matter is turned over to the hands of a merits panel that would decide all your contentions. Your Honor, I don't agree that that would satisfy the problem. Why not? Because there's daily coercion to violate religious beliefs. When you take away someone's entire livelihood and say, unless you violate your religious beliefs, you're not paid today, you're not paid tomorrow, you're getting evicted, you don't have health insurance, you don't have a way to support your family, I mean, that's a problem. And the only way that they can get health insurance, by the way, is if they waive their right to sue, which means they'll never be able to address this problem. I mean, it's an ongoing coercion and burden on their constitutional rights, which is the most important thing here. I mean, if you wanted to reinstate at least their pay until another panel could hear this, that could be a solution where another panel could look more carefully at any of the... Well, the merits panel would have the ability to do that. But how long can they survive until then? Every day they're getting closer to being forced to make a decision to violate their faith. Well, hold on. The submission, the memorandum of law in opposition to the motion for an injunction pending appeal filed by the city government seems to provide some flexibility. So let me just read at page three. The city says any alleged harm arising before plaintiff's appeals are resolved could be addressed by a remedial order accounting for lost wages and the like. That shows a bit of flexibility, although it would be retrospective, I suppose. And that doesn't stop the daily coercion. So every day that they're being put into this position of not being able to feed their family or having to violate their religious beliefs, that's a new harm. So it's the harm on the religious belief, the pressure on the religious belief is the issue, just as much as the money is the issue. Understood. Well, let me go on. On page four of that brief, there's another seemingly flexible statement by the city which speaks of the postponement, the possible postponement of any  consideration of their accommodation request. In other words, they're trying to avoid. The city is arguing against the so-called sweeping injunction. And they suggest in what seemed to me to be a sign of flexibility, it said at most, plaintiffs might be eligible for narrow relief, like postponing any termination proceedings against them pending reconsideration of their accommodation request. What's wrong with that? They've already been terminated. I mean, they've already lost their money. So it's still the daily coercion to violate their religious beliefs. The city would have the purpose right, would it not to allow any religious exemption? No, Your Honor, I don't agree. But I do think, and I do think that the Doge Mills case indicates that once this gets fully briefed, the Supreme Court isn't going to agree either. They might not want to decide such a momentous case on an emergency motion, but that's not even the case before us. Right now, they do offer one, but it's discriminatory. And they do have to comply with Title VII. This is an employer. We're not just talking about whether the city can pass something. We're talking about an employer, and employers have an obligation under Title VII, as well as under the First Amendment if they're a government employer. Going back to this brief by the city in response to your application, they suggest that as of October 8, 2021, over 100 religious exemptions have been granted. Do you have any idea whether that's accurate, whether there are more? They also list... There's an affidavit that says that there's 20 religions that have been accepted. We don't have any information, but I will say this. Let's say, for example, that instead of saying only these religions can get an exemption, they said only white churches can get an exemption if you belong to a white church. If they happen to grant like 20 people of color an exemption, but they had a phase, they were applying and enforcing a facially discriminatory policy like that, that doesn't make any difference. It's immaterial if you somehow still succeeded, a few of you, under this discrimination. They're not arguing, and they haven't argued the law. They're trying to argue now that this is a one-off, one-at-a-time case that we should be looking at, but we had a blanket policy here that was discriminatory, and none of these plaintiffs were accused of being insincere. They were all excluded because they were told that their religious beliefs aren't valid. That's blatantly unconstitutional. Let me ask you if you could just help us to review the factual setting. What are the... In the nature of things, these motions for preliminary release are a matter of scrambling by counsel and the judges, and I'm wondering just what the situation here is. How many exemptions, if you know, have been given, and how many are pending, whatever? Well, we know that about 7,000 were submitted, and the city has admitted to granting at least 20. Of my plaintiffs, which there are nine, one has not... All have been denied at this point besides one, and I do think that's another important point. When we brought this case, the city is arguing, oh, they delayed, they delayed, but when we brought this case, they were also arguing it was unripe, and we couldn't even hear it because everyone was still pending, and then they didn't get back until after we brought the motion. Did you just say 20 were granted? I thought 100 were granted, but covering 20 different religions. The judge below, Judge Caproni, said she could only infer 20 from that declaration. It doesn't say 100. It lists 20 people. Counsel said she believes it's 100 people with 20 religions, but she doesn't know. That's not sworn, and it's not in the record. You're claiming, if I can try to restate your view, that your clients have been denied a religious exemption despite a proven religious belief. Is that right? Yes, Your Honor. Your plaintiffs have been subjected to what is known as sincerity analysis. It's an eccentric phrase invented, I think, in this circuit several generations ago. They've all gone through sincerity analysis. I'll give you one example. Plaintiff Cain, the arbitrator asked point blank whether the city was saying that he was insincere, and they said no. But they have not submitted any... The objection to each one was the validity of their religious beliefs. They have not submitted anything in the record to question the sincerity of any of these plaintiffs. All the plaintiffs have declared that they are sincere. I believe we can prove that at trial, and there's nothing in the record to question that, and in their proceedings they were not questioned on that issue. Your clients have brought a class action suit. Is that right? No, we've talked about amending, but at this point we haven't. But it is meant as an impact both of these cases involve countries... So they're not purporting to represent... We lost Judge LaValle. I'm sorry, Judge, I lost... Judge LaValle, you may have gone into mute. Can you check? We can't hear you. I can't hear you, and Ms. Gibson can't hear you. Judge Chin, can you hear... I cannot hear Judge LaValle. Are you back, Judge LaValle? No. It just shows that you're muted. Try it again. Take it off and try it again. Yeah. Try now. Did you become unplugged? Try replugging your mic in. Hello? Can you hear me now? Yes. You're back. Can you hear me now? Yes. Why don't you reprise where you were going? I was asking how many clients do you have? Nine, Your Honor. You have nine clients. Well, then suppose that this panel were to grant a stay to your nine clients. What would be wrong with that? I know it doesn't satisfy your desires, but as a matter of legal propriety, if your clients who have brought this suit were protected by a stay pending, a very short stay, a stay pending the court,   Well, Your Honor, if the court were to require its panel looking into this question and issuing whatever order it finds appropriate, either on a temporary basis or on a permanent basis, what would be wrong with that? Well, Your Honor, they bring a facial and as applied challenge, and as I said, it is meant as an impact litigation. Well, I know. The national movement in evaluating a facial challenge, the court has to also consider the interpretation and implementation of the rule, but I do think there is a facial challenge here that merits saying the entire thing because discrimination is ongoing and that is something that they are challenging facially as well. Obviously, if that's what we can get and that's what we can get, but the preference is to try to stop this blatant discrimination from happening. What's concerning me is that while you make some points that perhaps have considerable validity with respect to what the arbitrator set up with respect to distinction between one religion and another and one claim and another, even assuming that there is considerable validity to your claims, at the same time, the city has very, very strong interest in protecting school children from COVID and what I am looking for is a solution that will not unduly harm that very, very important consideration of not unleashing a terrible disease in the community or subjecting the city to punishing costs by paying people for not doing their job while protecting the interests of those who have brought this suit. There are many people that are bringing up how a lot of children have to be still remote right now and they're not being covered. One solution is these teachers that were, you know, we did have remote educations last year and a half, we still need it. They could still work remotely until we have the fuller hearing. Another thing to point out is they've been working in these schools for the last year and a half unvaccinated. It's not like there's suddenly a risk today when they weren't a risk on October 4th when this was put in place. They didn't change in terms of their risk level and they've been doing this for a year and a half, waiting a few more weeks to hear this issue I think would be important and we have submitted a declaration and sworn ones by very well regarded experts from Stanford and Johns Hopkins who each have joint appointments both in the medical and public health. You would be able to make all of those arguments to the merits panel and the merits panel would still be empowered to issue the broadest injunction if it decided that that was appropriate, the broadest injunction that you hope for. But the question is what we do in this interim spot just to fill the gap which may be as short as a couple of weeks until this case is before a merits panel and you could ask the merits panel to hear instantly your emergency motion without necessarily waiting for a full court hearing on the merits of your case. Right now, there isn't a merits panel. As soon as there is a merits panel, you can ask for emergency relief from that merits panel. It seems to me that there's an interest in balancing the interests of the city against the considerable interest that you have brought on behalf of nine people. Your Honor, if it's only a few weeks, paying them wouldn't be too much of a hardship and I'm sure the city could find something for them to do. They're very short steps. Also, I will point out that every other school in the entire state allows for testing in lieu of vaccination. So every other teacher, hundreds of thousands of teachers across the state, including in schools that are two miles away from New City schools, are just the teachers' contestants. It's not a huge percentage of the population.  between this I think that they said it's less than 5% of teachers were looking for the religious exemption. The difference between 100% of teachers being vaccinated and 95% of teachers being vaccinated, when you already have a population that's over 1 million unvaccinated people, you can't have herd immunity in that context anyway. So it's not like this can't make a difference to them. Ms. Gibson, following up on the comments of Judge LaValle, what is it that we can do for your nine clients pending the presentation of this case to a merits panel, perhaps in two or three weeks? So what is it that we would do? We would, in effect, stay the district court decision it's kind of an odd thing to say, a stay decision to deny a preliminary exemption, but some sort of release of that kind. What else do you need? I'd like to stay de Blasio's mandate and allow them to come up with a new one that actually honors... This comes back to Judge LaValle's perfectly legitimate query. You have not requested... You're not proceeding as a class plaintiff. In what sense would you be able, now or later, to achieve the goal of a school-wide, a school system-wide relief? On what theory do you move from nine clients to the thousands who are arguably the subject of your concern? Just as the healthcare decisions that were temporarily stayed were not class actions, this is not. It's a facial challenge to an unconstitutional law. Most facial challenges are not class actions and yet the law is stayed. It's also an applied challenge. As applied, yes, we would love it if our nine plaintiffs could get reinstated pending further proceedings, but they're also making a facial challenge. Especially if that were to be the case, and I really hope that we can do more for more of these teachers because it's so awful what's happening. In other words... For the facial challenge, if we could stay this waiver deadline because the terminations start December 1st, but the last deadline, there's another November 30th deadline where if they want to keep health insurance, they need to waive their right to sue. I'm just really hoping we can at the very least stay that stay the terminations so that they can at least keep their health insurance until the panel, we can reinstate my nine plaintiffs and hopefully Mr. Black as well. I'm sorry, would you tell me exactly what you are asking to have stayed? What should be stayed if you got exactly what you wanted? Stay what? In the arbitration agreement as applied by the school, they've asked the teachers to indicate by November 30th. They've already missed the deadline to get their back pay and benefits, but if they want to maintain their health insurance for the next year, they have to sign a waiver by November 30th and they have to say that they will never sue to enforce their rights or to deal with the discrimination they face. We would have to stay that deadline and stay the corresponding December 1st deadline that says that the school will begin terminating people who haven't agreed to waive their rights by December 1st. Two things. One, I would ask that you submit to us by midday tomorrow a proposed order that would specify exactly what you're asking to have stayed because it's a little confusing what it is that the plaintiffs are seeking to have stayed. But then my question goes on to say, if we were to grant a stay in the terms that you've requested or lesser terms as we deal appropriate, less broad as we deem appropriate for your clients, isn't it not correct that you, as soon as a merits panel is named, you would be able to then go to that merits panel and say please broaden the stay beyond affecting my nine clients and make it system wide in view of our facial challenge? As long as everybody else didn't have to waive their rights first. As long as we also gave that waiver. Let's proceed with Judge LaValle's suggestion. Why don't we agree that by no later than tomorrow at 1 p.m., you will file electronically, I suppose, since it's a holiday. You will file a proposed order that would provide whatever relief you think is appropriate in these circumstances. You can accompany your draft order with a supplemental letter no more than three pages long. It's separated with two lines. It's a three-page letter and double-spaced three pages accompanying your proposed order. Then if you would give special attention to the questions that Judge LaValle has raised, which is how and why should this order grant relief to persons beyond the nine clients that you now definitely represent? Judge Chin, do you have any suggestions on what this order might include? I'm not persuaded that we should issue any order, so I will await to see what it looks like. I'm not persuaded either. I'm just asking so that we can see what an order would look like. I think the plaintiff is asking for, because as Judge Cabranes was saying, staying a district court ruling that denied relief doesn't really mean anything. You must be asking that we stay some aspect of the arbitrator's order. Is that right? What I asked for in my moving papers was to stay Mayor de Blasio's mandate. You want an affirmative injunction issued by the Court of Arbitration to stay in a sense. This will give you time to focus on the kind of order which would provide the relief that you think you're entitled to. None of the judges have agreed in asking you to do this. We're not intimating any view on the merits of any such request, but we're giving you the opportunity to focus this as best you can, given the line of questioning that you've encountered. I think in addition, it's obviously useful for you in that proposed order and in your short memorandum or letter to make it clear how it is that the court can move from the nine clients that you represent to in effect a class-based relief. I understand what you're saying as to why you think you're entitled to that, but it would be helpful to give us some help on that. While we're discussing this, you may want to give attention to what it is that the merits panel, which two weeks from now, will be hearing your argument. What is it that you have not yet presented by way of facts? That is, it's not clear to me, at least, that in the proceedings in the district court, it's not at all clear to me what it is that you were able to present to Judge Caproni. What is it that you think you should be entitled to show either the merits panel of the Court of Appeals or on remand to Judge Caproni? Okay? Thank you, Your Honor. Thank you very much, Ms. Gibson. Now we have Mr. Black, who is ready to argue in the Keel case. Good afternoon. May you please the court. Since Ms. Gibson has focused the court's attention on the neutrality aspect of Smith, I should like to take some time to focus on what I think constitutes an even greater constitutional violation in this particular matter. That would be the general applicability consideration under Smith. The city has, of course, argued that this is a neutral law of general applicability and therefore Smith applies and the matter is subject to rational basis scrutiny. The key problem with respect to general applicability is twofold. First, the term generally  means it is applicable to the general public. That's the entire public, not a sub sector of the general public. Could I just interrupt you to ask a parenthetical question of the same sort that we asked to your colleague in the other case? How many clients do you represent and does your action purport to be a class action? Your Honor, we represent five individuals. It does not purport to be a class action, but as Ms. Gibson indicated, we have challenged this both facially and as applied and we believe we have made out a strong case in that regard. I understand that. To the extent that, Judge LaValle, that you were inquiring concerning what kind of stay, if you will, would benefit our case, not just our five individual clients. Since we are attacking or challenging this mandate on its face, we believe that a temporary stay of the enforcement of the vaccine mandate pending a fuller determination by a merits panel would be the appropriate course of action, but we will certainly work with Ms. Gibson and her team and perhaps present a joint proposed order that would serve both our clients if possible. When you say a stay, you're asking for an injunction, right? Correct. Enjoying the enforcement of the mandate. Correct. And why explain to me, if you could, why is this not a regulation of general applicability? Yes, Judge Chin. I'd love to address that and in doing so, I would like to go back to Smith itself. Smith expressly relied on five cases in coming up with the Smith Rule. They were all statutes that applied to everyone everywhere and at all times. This mandate applies to all Department of Education employees. Is that okay? That is not correct, Your Honor, because there are we have listed in our papers at least eight specific exemptions or eight specific classes of people to whom it does not apply. And by the way, it's not just for employees. It also applies to those entering Department of Education buildings, but except certain others. We have noted, for example, that bus drivers are exempted from this as are FedEx and UPS drivers, delivery personnel who come into the building to make deliveries, parents registering their children, and children themselves who have obviously not been vaccinated at this point. And if I may go back, Judge Chin, to those five cases that the Supreme Court in the United States has determined, the foundation for its determination were the following. Reynolds v. United States, which involved criminal laws against polygamy. Prince v. Massachusetts, which involved child labor laws. Bronfeld v. Brown, which involved criminal laws concerning Sunday retail. Gillette v. United States was about military enlistment under the Selective Service System. And finally, United States v. Lee concerned the payment of Social Security taxes. It was because it relied on cases like that and assumed and understood general applicability to mean laws like that, that applied to everyone everywhere at all times, that the Court, and specifically Justice Scalia, penned his name to that decision saying, yes, that is subject to a rational basis analysis, only because they are so broadly applicable and there are no carve-outs. And, of course, there is no room for discretionary individualized exemptions. When we talk about general applicability, are we not talking about selectively focusing on a religion as opposed to, you know, delivery men or bus drivers? I don't believe so, Judge Shin. I believe a law of general applicability such as a law of taxes, everyone pays taxes. In fact, the Court went on to explain, well, if we start carving out exemptions, and I say, well, my faith says I don't have to pay taxes, we have no tax law. But it has to be that broad in order to really qualify as a generally applicable rule. Not a law... Judge Shin, may I propose this? If the facts in Smith in 1990 had involved an Oregon statute that criminalized the use of controlled substances only at the government rehab center at which Mr. Smith was a counselor, but allowed UPS and FedEx drivers and voters and parents and a million children to freely use drugs while denying religious groups that same exemption, I am sure that Smith would have resulted in a very different outcome. It is because all of those statutes were simply generally applicable. They apply to everyone. But what about the rule in our decision last week in We the Patriots? That was the mandate applied to employees, right? It didn't apply to everybody who was a member of the   was a member of the organization. Your Honor, but it didn't have... That is right, Your Honor. But it did not include... And there we know that that was a rule of general applicability. That is true. But it is very distinguishable from here because we have specific categorical, numerous specific categorical exceptions to these standards, to the enforcement standards, to the policies that are being used to enforce this mandate. As such, this is not simply, not even remotely within the kind of generally applicable cases upon which Smith itself relied in arriving at its decision. But then there is one other prong to this, and that is of course that Smith expressly disallows discretionary individualized exemptions, and Smith referenced the good cause language in Sherbert, because it essentially means that the person reviewing the application in that case for unemployment benefits gets to make his or her own decision. Does this person get the benefit or not? You cannot have a system like that and call it generally applicable. But here, in our case, the mandate itself on its face provides for a determination of reasonable accommodations, and the exemption standards set forth in the U of T awards, in the arbitrators award, speaks of employees legitimate medical or religious concerns. And we have seen it in the review process. We have seen it on video in arbitrators, those employees who challenged and sought review of their denials, and arbitrators arbitrarily essentially determining, based on their own standards, whether it's legitimate or not, whether your minister is right or wrong, whether your face holds the right position, whether your face is scientifically sound in its determinations with respect to vaccinations. And these are all flatly outside of the purview of what's the allowability of Smith. Smith disallows that to be included within what would be called generally applicable statutes. And we feel, Judge Shin, as you have just inquired, specifically, that is what distinguishes this particular case from probably any other. We are aware, of course, not only the Ouida Patriots, but the Maine decision and the various others. But here we have a case that is so patently unconstitutional, requirements that the leader of your faith agree with or that if you, your position is different from that of the leader of your faith, you're out of luck and you can't get an exemption. That's blatantly unconstitutional. We haven't seen these kind of standards in any other case that we have reviewed. And therefore, we believe that this case is unconstitutional. And as such, the defendants have clearly not implemented the least restrictive means concerning the safety of the children in enforcing this mandate. Judge Brent, I believe you're speaking, but you're on mute. Good catch. Thank you, Mr. Brent. I have a couple of questions. I'm not sure that the record here is as fully developed as usual in cases seeking preliminary injunctive release. So let me ask you, what additional opportunity to develop the record do you think would be appropriate or helpful to the parties? And we recognize that we're in a situation where there's a great rush and there are timetables that are relevant, but is there something that you and other counsel for plaintiffs were not able to present to Judge Caproni? Your Honor, I'm really pleased that you asked that question because as recently as yesterday, I was on with the clerk of the court asking questions concerning the possibility of offering in new evidence that's just trickling in, such as an email from the Department of Education saying this is the only way you can enforce the mandate through the arbitral process, and there is no second prompt. These are the kinds of things we would love the opportunity to present to the court. So insofar as the panel has proposed a 1 p.m. submission tomorrow, and with full sensitivity to Ms. Gibson's question, I would say that every day there is an ongoing pressure to choose between faith and job. Since we do have a November 30th deadline, that's the real deadline by which they need to make a decision, I don't think it would be a terrible and grave harm if we waited a few more days, today being Wednesday, I would say perhaps until Friday for us to supplement the submissions with some fresh evidence and with anything else that the court would like to help it in making the determination. You can make new submissions with whatever you want to the merits panel, which very soon will have this case. What is before us is the question whether to stay anything, and if so, what to stay or otherwise put temporarily and join pending submission to the merits panel. So you can submit new papers. The merits panel is not hearing an appeal from our ruling. The merits panel will be hearing whatever motion you decide to put before the merits panel as well as the appeal from the district court's decision. As new information develops, you can put that into motion papers that you will address to the merits panel. We have to make an urgent decision here whether to grant you any relief, any temporary injunction whatsoever. To follow up on Judge Duval's comments just now, I suppose in the order that you and Ms. Gibson will be working on for submission tomorrow, you may wish to include a sentence or two suggesting or indicating that further applications might be possible before the merits panel. I mean, I don't know whether that would be satisfactory to my panel colleagues, but I can imagine a sentence or two which indicated clearly that you are indeed able to do what Judge Duval has just suggested. So, you'll be able to do that, but that doesn't mean you can't foresee or project what you're going to do in the order, the proposed order that you and Ms. Gibson will be working on. Now, let me ask you, considering, with respect to the record that all of us find a little inadequate at this point and perhaps inadequate for the merits panel, can you tell me how many persons, can you tell the panel how many persons are today exempted from the mandate at issue here? Do we know that? We have no more information than that which was stated earlier on by Ms. Gibson. The only other factual, the only other matter of factual significance that I could propose that has recently become somewhat substantiated is that, to the best of our knowledge, New York City is the only school district in the state of New York that has enforced a vaccine mandate. We have literally had people canvassing, calling schools, looking up their website, and New York City appears to be, this is not a scientific study, but it appears to be the only district that has implemented a vaccine mandate. Well, speaking only for myself, I think it would be, I think when Ms. Paulson begins her argument, I think from my point of view, I would like to suggest that the city supplement this record for our benefit as well as for the benefit of the merits panel to provide as much information in affidavit form as to how many persons are today exempted from the mandate under the regime that we're discussing, and secondly, whether the suggestion here that the New York City mandate is unique, whether that is an accurate statement. I understand that all of you are acting in good faith. I'm not suggesting otherwise. It's just important that you at least have an opportunity to provide to both panels whatever information is readily available. So I will ask Ms. Paulson in due course to do this. Let me turn to Judge Chin and Judge LaValle if they have any further questions for Mr. Black. Not at all. Okay. Thank you very much, Mr. Black. Let's hear from both Ms. Gibson and Mr. Black. Of course, extensive amount of time beyond the original amount of time contemplated. Let's hear from Ms. Paulson. Good afternoon, Your Honors. May it please the court, Susan Paulson on behalf of the city appellees. Your Honors, first and foremost, the plaintiffs have not demonstrated a clearer substantial likelihood of success on the merits of their facial challenge to the mandate itself, to the commissioner's order. The commissioner's order, on its face, is facially neutral. It does not mention religion. It applies whether employee's opposition or reluctance is due to objections to vaccine requirements, concerns about the vaccine's efficacy or possible side effects, or religious beliefs. It is facially neutral. In addition, as Judge Chin noted, it is generally applicable. It applies to all DOE staff, full or part-time employees, interns, and volunteers. As in the way the people appeal it, it's an employee mandate and is generally applicable. And it does not provide for individualized exemptions. On its face, all that the commissioner's order itself provides for is any reasonable accommodation otherwise required by law. These are not individualized assessments. They're bounded by the well-known principles. Council suggested that there are categories for bus drivers, UPS delivery people. Is that correct or not? Those are the individuals that Council identifies that are exempted from this requirement. And he contends that it's substantially under-inclusive because bus drivers and students and UPS drivers, election officials and voters who may interact with school children or enter school buildings  correct that those individuals are not covered. The requirement, the employee requirement, is not substantially under-inclusive for its failure to cover either individuals that are not DOE employees, individuals who come into the building under those circumstances. It's a system of vaccination for individuals working in school settings or in school settings in substantial amount of time. There are other exemptions. Parents coming in to register students are not required to show proof of vaccination. Again, this does not make it substantially under-inclusive such that it is not a generally applicable requirement. And why do you say that? With all these categories, why doesn't it become substantially under-inclusive? Or is there any guidance, a case? Your Honor, the activities don't pose the same risk because the extent of contact is not the same. The city is trying to effectuate a policy that they can implement, that they can manage the employees within their control. They exempted certain categories like paramedics who respond to a child emergency. That doesn't make it not spatially neutral or generally applicable. It makes it a reasonable policy decision to try to encompass as broadly as possible as many categories of individuals that are within their control that it makes sense to encompass. The fact that there are some, you know, and certainly the students, there's no FDA-approved vaccine for them, which is why they're not included in this requirement. It's an employee vaccine mandate that was created only after there was FDA approval. So Ms. Gibson's comment about all that time that employees were permitted to work without vaccination is because there was not yet an FDA-approved vaccine. And for that reason, the Commissioner of Health declined to comment. Once it was issued, it is a facially neutral policy that's generally applicable, and there certainly is no basis on this record to enjoin the Commissioner's order itself. Is it accurate to say that, as has been stated by opposing counsel, that the New York City mandate, which is at issue here, is unique within New York State? I have absolutely no information in that regard. I would have to follow up. I certainly know anecdotally that with respect to private schools that's not true, but as to other public school districts, I do not know. I think it would be helpful in the punitive affidavit that you will be preparing if you could give us whatever information. Certainly. I am puzzled by your reference to the Commissioner's order. Much of the argument of your adversaries is directed to aspects of the arbitration order in that, for example, it distinguishes between major established religions and smaller religions. It makes eligibility dependent on a letter from a clergy member and it disqualifies persons for whose religion a leader has spoken in favor of vaccination. Without making a suggestion of whether those are lawful or not lawful, they raise questions. That's what the major thrust of your adversary's argument depends on, as I understand it. What do you say about those? Those are not facially neutral. They make distinctions between different religious circumstances. What about that? Yes, Your Honor. The war, as the panel is well aware, is an war that was written by an independent arbitrator who said... But it's being enforced by the city. It's become the blueprint for the city's enforcement of the arbitrator's decision. Your Honor, the city is implementing the results of the arbitral panel. That is correct. But the city... The panels are by independent arbitrators. The city is not guiding the ultimate decision-making in the appeal channels. Ultimately, once the decision is made, it is effectuating the consequences. Therefore, once the arbitrator's decision has been made and is recognized as governing, city policy, city action, is being dictated and directed by an arbitrator's decision to make the kinds of distinctions that I was just referring to. And so, I mean, this is not like a private employment decision. This is a matter that has been, you know, pursuant to an arbitrator's award, has become the policy that a city employer is carrying out. Well, Your Honor, as the city understands the arbitration award, it provides an expedited review process, an alternative to statutory remedies to seek an expedited review. I mean, this was, this came after school had already started, right? The arbitrator issued this award, created this expedited review process that individuals could go through this process to try to have a determination made as quickly as possible as to eligibility for religious or medical exemptions. The award itself says that it's an alternative to statutory reasonable accommodation processes. And when the Commissioner of Health amended his order after the arbitration awards were issued, the Commissioner of Health certainly understood that it did not preclude reasonable accommodation as required by law, right? I mean, the Commissioner, too. Now, I grant you the arbitration award is not a picture of clarity. And I am not sure, and this is a place that perhaps further factual development would aid all of our understanding. To the extent that people went through this expedited review process, from plaintiff's own affidavits, some of them were held to these standards of requiring a clergy letter or membership in established religion or consistency with the statements of the faith leader, but others were not. From the Martinez affidavit submitted by the appeals plaintiffs, appeals were granted to an Orthodox Jew, even though the chief rabbi had said endorsed vaccination. An exemption was granted to a Catholic who failed to present a clergy letter. And the Cain plaintiffs submitted the declaration of an individual who was denied based on an undue burden analysis. So even within these appeals hearings, it's not clear the extent to which some of these appeals may very well have been denied based upon, you know... You're saying to us that to the extent that the arbitrator's award includes aspects that are constitutionally questionable, we should just disregard them because it's not absolutely clear that the city is acting in accordance with those? Is that what you're saying? I don't think that we should disregard them, but I think that it should... But if we regard them, if we regard them, what do we do with them? What we do with them, I think it should narrow the lens through which we look at the relief here. To the extent that there are individuals who may have been denied religious exemptions based upon the application of improper criteria, I think that there may... There may be a basis here to look at to stay the termination deadline, stay the deadline for a waiver of health insurance option for these individuals. But because there is no evidence in this record that suggests that the award is being applied across the board in an unconstitutional manner, I don't think there's a basis here to do anything more extensive than look at how the individual plaintiffs before the courts free exercise rights may or may not have been violated. What if we were to do this? What if we were to issue an order that temporarily pending any decision by the merits panel, whether on a motion or on the resolution of the appeal, any decision whatsoever by the merits panel, the application of the arbitrator's award to the individual plaintiffs whose cases are before the court is stayed to the extent that they claim entitlement to a religious exemption, which has been denied. How would that be? I think that that would appropriately narrow the relief to the claims that are before this panel that have been substantiated in the declarations before the court. There's nothing beyond that I think that would be appropriate at this juncture. But at this juncture to the extent that the plaintiffs have submitted declarations that state that they were denied pursuant to improper criteria, I think that those denials could be reviewed again under constitutional standards. Do we have information as to how many instances there are in which an application for a religious exemption has been denied? I don't have the exact numbers. Several thousand applications for religious exemptions were denied. To the best of my knowledge, about 1,400 or 1,500 of those appealed, not everybody appealed, and 10% of those, a little more than 10% of those were granted religious exemptions. I believe as of October 28th there had been 163 religious exemptions granted and I believe that there were approximately two dozen that were still pending. How many, let me change my question, how many who appealed, how many who were denied a religious exemption and appealed the denial of the religious exemption remain denied? 90%. A little bit fewer than that. In other words, it's several thousand. Is it about 1,200? No, I think it's about 1,200 or maybe 1,300. Okay, thank you. Am I hearing you say that the city wouldn't oppose a stay of the waiver date and the termination date for these 15 appellants? For these 15 appellants, the city would not oppose a stay of the waiver date and the termination date pending a redetermination of their appeal request, not indefinitely. The city would want to review those requests without applying any constitutionally suspect standards and determine whether or not they're eligible for a religious exemption. It would not be an indefinite stay. It wouldn't be an indefinite stay. You could address the merits panel with any timetable that you thought appropriate. Absolutely. Ultimately, Your Honors, as you have already noted, the public interest in the balance of equity strongly favors a denial of a global injunction in joining the vaccine requirement for all DOE employees. The interest in minimizing the spread of COVID in the schools for the safety of the children and other school employees and the community at large remains paramount, as does the interest in ensuring that in-person schooling can continue uninterrupted for as many children as possible and preserving the reliance interest of parents and caregivers who return their children to school under an understanding of the safety protocols in effect. All of these weigh strongly in favor of a denial of a broad sweeping injunction of vaccine manage and as narrow a relief tailored to the harm as possible, limited only to these 15 plaintiffs. Thank you very much, Ms. Paulson. Thank you. I'm sure somebody's been taking notes about all the impositions that we've thrust upon you. So we thank you very much. I think Ms. Gibson and Mr. Black did not reserve time.  I'll give each of them one minute. Ms. Gibson and Ms. Paulson, and then we'll move to the Rubenstein case. Thank you, Your Honors. Thank you very much, Ms. Paulson. Ms. Gibson? Thank you, Your Honor. I just want to conclude by saying that we cannot protect public health by discriminating against minority religious viewpoints. That is not the solution to protect public health. There are many other tools in our disposal, and the government has given the burden under this rubric of where there is such a clearly discriminatory policy of showing that they have used the least restrictive means. They didn't even bother in this case. There are many least restrictive means, and we did show that in our papers, and I'm happy to bring them forward again. The last thing I'll say is when we're talking about these 15 plaintiffs, they've been subjected, all of the plaintiffs have been subjected to a patently discriminatory process. There is no alternative Title VII process. That's a fabrication as our papers address. They were all entitled to this. It shouldn't just be whether they can say on their papers or not that they personally were, they all said that they were discriminated against. One person didn't even apply because she knew that it was discriminatory and refused to engage in that process because she has her own personally held beliefs. In closing, I ask for all of the plaintiffs to be reinstated. Thank you very much. Mr. Black, one minute. Your Honor, I would like to direct the panel's attention to the section of the arbitrator's award to which the city just referred. Namely, the city would have the panel believe that this arbitrator's award was to have been an alternative to any statutory reasonable accommodation. There is a full sentence. When we read the full sentence on page six of the arbitrator's award, it reads as follows. As an alternative to any statutory reasonable accommodation process, the parties shall be subject to the following extradited review process. That simply means instead of anything else, this is the only process that the city shall follow. They read it wrong and it's misleading. This is the issue that would at least cover those 1,200 or 1,500 or however many people that have been denied because we know that it has only gone through this sole enforcement mechanism, which is facially unconstitutional. I thank the court very much for its time. Thank you, Mr. Black and Ms. Gibson and Ms. Paulson. We thank each of you for excellent arguments.